Freedman, J.
This action, is brought by the plaintiffs, as a corporation, against the defendant, for the recovery of $180,000 damages, alleged to have been sustained by reason of divers alleged libelous publications *15 of and concerning the plaintiffs, contained (1) in a pamphlet entitled Life Insurance Chart, annually published by the defendant, and embodying a brief synopsis of the annual returns of life insurance companies ; and also (2) in *16 three advertisements inserted in different public journals published in the city of Hew York, and inserted by the defendant with the view of calling the attention of the public to said Life Insurance Qhart, and containing sub *17 stantially the same statements concerning the plaintiffs’ company, claimed by them as libelous in the chart. Upon the complaint in this action, and an affidavit sworn to by the president of the plaintiffs’ company, and an *18 aflB.davit sworn to By one of the attorneys of the plaintiffs, an order of arrest was obtained from one of the justices of this court, and in pursuance of said order the defendant has "been arrested, and compelled to give bail for *19 Ms appearance in this action, consisting of two sureties, justifying in the sum of $10,000 each. The defendant moves upon affidavits made in his own behalf, and also upon the complaint and affidavits of the plaintiff, upon *20 which the order of arrest has "been granted, to vacate the order of arrest, or for a reduction of bail.
Subdivision 1 of section 179 of the Code provides that *21 a defendant may be arrested in an action for the recovery of damages, on a cause of action not arising out of contract .... where the action is for an injury to person or character, &c., &c. Section 180 prescribes that an or *22 der for the arrest of a defendant must be obtained from a judge of the court in which the action is pending, and, according to. section 181, the order may be made by the judge, whenever it shall appear to the judge by the affi *23 davit of the plaintiff', or of any other person, that a sufficient cause of action exists, and that the case is one of those mentioned in section 179.
These provisions do not give to the plaintiff an absolute right to an order of arrest; the language of the Code is permissive only ; the words of the Code are not that the judge shall make the order, but merely that the order may be made. It therefore rests in the sound discretion of the judge to grant or refuse the order. In Davis v. Scott (15 Abb. Pr., 127), Daly, F. J., says that it is a proper exercise of that discretion to grant the order of arrest only in actions of assault and battery, libel or slander, where it would have been granted under the former practice, or in extreme cases of very outrageous batteries ; or when it is shown by affidavit that the defendant is a non-resident; or from facts and circumstances that there is good reason to believe that he is about to, or may, depart from the State ; and at the same time that learned jurist proves by authority that by the practice established in the supreme court when the Revised Statutes went into effect (1828), an order would not be granted for the arrest of a defendant in actions of assault and battery, libel or slander, except slander of title, unless the defendant was a transient person, or was about to depart from the State, or unless in very extreme cases of violent and cruel batteries ; and shows that a strict acL *24 herence to the salutary rule referred to by him, which has prevailed in this State from a very early period, is not inconsistent with the provisions of the Code. The granting of the order of arrest in this matter was therefore a matter of discretion for the judge granting the same.
The plaintiff seems to agree to this proposition, but strenuously insists that the exercise of that discretion by one judge will not be reviewed by another.
Section 204 of the Code provides that a defendant arrested may, at any time before judgment, apply on motion .to vacate the order of arrest, or to reduce the amount of bail, and it has been well settled that the motion referred to in this section may be made before the judge who granted the order,- or before any other judge ; in the latter case, it belongs to the class of motions termed iron-enumerated motions, which must be made upon notice to the adverse party, and which, according to the rules of the court in force at the present time, should be heard at special term only. To deny to a defendant, arrested upon an order of a judge made out of court, a hearing and thorough investigation at special term would, indeed, be a great hardship. A judge, upon granting an order of arrest, is only bound to see that the plaintiff presents a prima facie case, and if, at the same time, the plaintiff tenders a sufficient undertaking to the effect, that if the defendant recover judgment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages which he may sustain by reason of the arrest, not exceeding a certain sum, which is specified in the undertaking, and which shall be at least $100, an order of arrest under our present system of practice is often granted as a matter of course. In such case, the judge granting - the order hears only one side ; the plaintiff’s statements may be highly colored and strained ; different conclusions may be drawn from them; the judge applied to, being pressed with other business, has not the time to examine them very minutely, but grants the order in the expectation that if the defendant is able to overcome or *25 explain the case, as made by the plaintiff, he will not neglect to do so, and set himself right before the court, either upon the plaintiff’s own papers, or upon new affidavits prepared on behalf of the defendant.
Nor can I subscribe to the proposition advanced by the learned counsel for the plaintiff, that the defendant, by giving bail, has precluded himself from questioning , the sufficiency of the plaintiff ’ s complaint and original affidavits to sustain the order. The case of Stewart v. Howard (15 Barb., 26), cited in support of this theory, simply decides that a person arrested on civil process waives his personal privilege from arrest as a witness by giving bail; and the case of Dale n. Radcliffe (25 Barb., 383), is not in point now, for the reason that at the time of the decision made in that case, a defendant, arrested under the provisions of the Code, was compelled to move to vacate the order of arrest before the justification of his bail.
As the Code now stands, he may move at any time before judgment, and section 183 provides further that an order of arrest shall be of no avail, and shall be vacated or set aside on motion, unless the same is served upon the defendant, as provided by law, before the docketing of any judgment in the action, and that in all cases the defendant shall have twenty days after the service of the order of arrest in which to answer the complaint in the action, and to move to vacate the order of arrest, or to reduce the amount of bail.
Having thus disposed of some of the most important preliminary questions raised upon the argument of this case, and passing over others raised partly by the plaintiff and partly by the defendant, but which I clo not deem of great importance, I proceed to examine the application upon the merits involved in it.
On the part of the defendant, the right of the plaintiffs • to bring this suit as a corporation has been questioned. The books contain but three precedents for such action by a corporation (Trenton Ins. Co. v. Perrine, 3 Zab., 402 ; Metropolitan Saloon Co. v. Hawkins, 4 Hurl. & *26 Nor., 87; Shoe & Leather Bank v. Thompson, 18 Abb. Pr., 413). In all these cases the language used was defamatory. The right to bring the action was based on ■ the damages sustained by the companies ; or, to use the language of Pollock, C. B., in the English case, “A corporation may maintain an action for libel by which its property is injured.” “ The true rule,” says Ingraham, P. J., in the Shoe & Leather Bank case, already referred to, “ seems to be as to the power of corporations to maintain actions, that they may do so in all cases necessary for the preservation of their property and rights, and for the recovery of any damages occasioned by- the wrongs of others, but not for those damages to person and character, for which an individual may recover unconnected with loss or injury to property.”
This being, therefore, in some respects, a new remedy, it will not be more extensive than analogous remedies given to individuals—nay, it necessarily must be more limited. But analogies may be borrowed from the former, as follows: if the alleged libel must be defamatory as to an individual, it must be so as to a corporation. If express malice would be necessary in the one case, it is in the other. The necessity of an averment, and the mode of averment of special damage, and the mode of proof, if necessary in the one case is necessary in the other.
Upon a careful consideration of the principles involved in such cases, I have come to the conclusion that a corporation engaged in a business in which credit may be material to its success, may maintain an action of libel without proof of special damage, where the language used. concerning it is defamatory in itself, and injuriously and directly affects its credit, and necessarily and directly occasions pecuniary injury ; but that in all other cases the averment and proof of malice and special damage is necessary. And I am also of the opinion that whenever a corporation is entitled to maintain an action of libel in the cases specified, it may also procure an order for the arrest of defendant under section 179 of the Code, as a *27 provisional remedy in that action. In such case the word “ character,” contained in subdivision 1 of section 179, must be construed to mean “business character.” It remains, therefore, to inquire whether, upon the case as made by both sides, sufficient grounds appear for the arrest of the defendant.
The complaint embraces five counts. The first count sets out the following language, taken from the Life Insurance Chart, hereinbefore referred to, as one of the libels complained of: “ Knickerbocker: Stockholders are entitled to 13 per cent, annually on capital over legal interest ; dividends declared to policy holders the sixth year and annually thereafter.”
The second count sets out the same language and the following passage as an additional libel: “Knickerbocker. Dividends when applied on—Life, sixth year— Endowment, sixth year—Ten years—sixth year.”
In the third, fourth and fifth counts, the plaintiffs complain of the following passage appearing in the advertisement inserted by the defendant in three public journals published in the city of New York: “Knickerbocker, No. 161 Broadway, New York. Stockholders are entitled to 20 per cent, of the profits, besides an interest dividend on the capital. . . . Interest and profit dividends paid to stockholders on §100,000 capital from 1853 to 1867, §139,310.75.
The plaintiffs claim that the defendant, by the several publications aforesaid, intended to charge and to induce people to believe that stockholders in said company were entitled to receive, and did receive, a dividend of thirteen per cent, over legal interest on the stock held by them therein ; that no dividends were declared to the holders of policies issued by the company until the sixth year after the issuing of the. same, whether the said policies were issued for the term of the natural life of the person * insured thereby, or whether they were endowment policies, or policies having ten years to run; that stockholders in said company were then entitled to receive and that they did therefore receive twenty per cent, of *28 the profits of said company, beside an interest dividend on the amount of capital stock held by them respectively, and that there had been paid to stockholders in said company from 1853 to 1867, the sum of $139,310.75 on a capital of $100,000. The plaintiffs further claim and allege that in truth and in fact stockholders in said company were not entitled to, and did not receive a dividend of thirteen per cent, annually over legal interest on their stock; that dividends were then declared to policyholders before the sixth year after their policies were issued ; that stockholders in said company were not entitled to and did not receive a dividend of twenty per cent, of the profits, besides an interest dividend on the amount of capñtal stock held by them respectively; nor had' said company paid to stockholders the sum of $139,310.75 as interest and profit dividends on $100,000 capital from 1853 to 1867.
The plaintiffs, in the first, third, fourth and fifth counts, further charge, upon information and belief merely, that at the time of publication the true state of affairs was well known to the defendant; the second count contains no such allegation. Each of the counts set forth in the complaint contains a further allegation that the defendant, well knowing the premises, but intending to’ destroy the reputation of said plaintiffs, and injure their business, did compose and publish the matters complained of.
This is the only allegation contained in any of the plaintiffs’ papers used on this motion charging malice or an evil intent on the part of the defendant. The affidavits of the plaintiff do not charge the defendants with malice or any evil intent whatever, nor set out a single fact from which the same could be inferred. Each of the five counts embraced in the complaint concludes with the following specification of special damage : “ That by reason of the premises a large number of persons refused to take policies of insurance issued by this plaintiff, or to make application to the plaintiffs for insurance, whereby said plaintiff was injured in its reputation and business, and lost a large amount of premiums which it would have re *29 ceived, and whereby it sustained large damages,” &c. None of the affidavits contain a further specification of damage, nor any facts from which the extent of the plaintiffs’ damage, if any, could be seen. The president of the Knickerbocker Life Insurance Company, in an affidavit sworn to on the 2nd day of February, 1869, further shows that the stockholders of said company, “prior to Jan. 1, 1868, had not received on an average exceeding two per cent, annually over legal interest on their capital stock, and that the total amount of interest and profit dividends paid to the stockholders of said company, from 1853 to 1867, did not exceed $115,000,” &c., &c.
The foregoing statement contains substantially all the material facts upon which the plaintiff relies. Mfhe language complained of not being actionable per se, the averment and proof of malice and special damage is necessarwj This the plaintiff attempted to set forth in the complaint, which is sworn to by the president of the company, and has been used as an affidavit upon the application to obtain the order of arrest. But frequently a sworn complaint will not be alone a sufficient foundation for the order of arrest, for the reason, that, although the averments may be sufficiently specific to sustain the complaint, as such, they may not be sufficiently so to sustain an order of arrest. Thus, in an action of malicious prosecution, it is enough for the complaint to set out in general terms malice and want of probable cause.
But to sustain an order of arrest this is not enough. The facts relied on as presumptive evidence of want of probable cause must be set forth in the affidavit, so as to enable the judge to whom the application is made to draw the proper conclusion of law. If such facts are omitted, the party swears only to his own belief, and thus his own opinion, or that of his counsel, is substituted for a judicial decision (Yanderpoel v. Kissam, 4 Sand/., 714).
In the same manner it is necessary in this case that the complaint in this action should not only charge that- at the time of publication the true state of affairs was well *30 known to the defendant (and this is done merely upon information and belief), that the defendant intending to destroy the reputation of the plaintiffs, and injure their business, did compose and publish the matters complained of, and that the plaintiffs sustained the damages alleged therein, but that the affidavits of the plaintiffs should contain sufficient facts from which the judge or court can see that the defendant must have known the true state of affairs, that he was actuated by malice in making the publication, and that the plaintiff suffered damage in consequence thereof. This the plaintiff did not do, although his counsel seems to have been fully aware of the necessity thereof, for an affidavit thereof was attached to the verified complaint sworn to by the president of the Knickerbocker Life Insurance Company on the same day the complaint was verified, in which the said president swears that he has read the couu¿aint in this action and knows the contents thereof, ancfihen goes on and confines himself to show in what respects the publications of the defendant were false, but wholly omits to swear that the allegations contained in the complaint are true. The same omission occurs in the affidavit read by the plaintiffs in opposition to the motion to vacate the order of arrest, so that upon the plaintiffs’ own papers I am asked to uphold the order of arrest upon the bare fact of the publication of a statement not defamatory in itself, the falsity of the same in some particulars, and an allegation of damage, the extent of which, if any occurred, I cannot ascertain.
. As the words complained of are not libelous on their face, the plaintiffs are bound to show, by facts and circumstances, how they became libelous, and that the defendant at the time of their publication knew their libelous character. Presumption of malice can only arise when the publication, on its face, is capable of conveying an injurious effect. Every man is presumed to foresee and intend all the mischievous consequences that may justly be expected to flow from his voluntary acts. But the cases of constructive malice are exclusively such as involve *31 words capable of bearing in themselves a libelous meaning. The law in such cases reasonably presumes no more than this, and when a hidden defamatory meaning is sought to be attributed to words in themselves innocent, and on their face containing no such sense, by extrinsic facts outside and independent of the publication itself, the knowledge of such facts must be shown, by averment and proof, to have existed in the breast of the defendant at the time of publication.
The words complained of do not even necessarily imply a charge of mere mismanagement against the company or its officers ; on the contrary, as long as the press and the public remain divided in opinion as to the best plan upon which life insurance companies should be organized and carried on, the statements published by the defendant concerning the plaintiffs may be looked upon by many as highly eulogistic of the safe and prudent manmer in which the affairs of the plaintiffs’ company have been heretofore conducted ; they may with many people amount to a positive recommendation, for they certainly seem to demonstrate that so far the plaintiffs’ company has been very careful in assuming risks, and fortunate besides. The words being capable of this interpretation, the burden of proof is upon the plaintiff to show by facts and circumstances that they were used in a libelous sense, and that the defendant was actuated by malice. The plaintiffs have failed to do so.
The defendant, on the other hand, shows by affidavit that he has been for over fifteen years past a resident of the city of New York ; that he is a man of family, has been a tax-payer on personal estate in the said city for several years, and that he has no intention to leave the same or remove therefrom; that he was from 1859 to 1868 one of the editors and proprietors of a monthly journal called The Wall Street Underwriter and General Joint Stoch Register, published in this city ; that he had been since September, 1868, the sole editor and proprietor of said publication ; that in the pursuit of his business he frequently had occasion to and continually does give to *32 the public statistical information of the state and condition pecuniarily or otherwise of the insurance companies of this and other States devoted to the life, fire or marine business; that the pamphlet referred to by the plaintiff as the Life Insurance Chart, containing the matters complained of in the first and second causes of action, is a fair and truthful compilation, gotten up by him from extracts from the original verified statements filed in the Hew-York Insurance Department, of forty-four life insurance companies in the United States, and was not a publication directed at the Knickerbocker in particular, any more than at the other forty-three companies named in it.
The defendant then goes on and shows how he compiled the facts published in said Chart, and in the advertisement complained of in the third, fourth and fifth causes of action, that at the time of the publication he had every reason to believe, and did believe they were true ; that the publication was made with good motives and for justifiable ends, and finally concludes by showing how in some particulars he was misled partly by the returns and statements and charter of the plaintiffs’ company, and partly by statements contained in the ninth annual report of the superintendent of the Insurance Department of this State, as printed by order of the legislature for the year 1868 ; that he is a policy-holder in the plaintiffs’ company since the year 1867 ; that said policy is on his own life in favor of his wife for the sum of $3,000, and that several years ago he induced other persons to insure in plaintiffs’ .company.
The defendant thus not only denies all the allegations of the plaintiff, so far as it may become necessary for him to deny them, but in addition thereto he presents facts and circumstances which stand forth uncontradicted, and which, as the case stands before me, almost conclusively prove that no such malice or evil intent toward the plaintiff as has been charged against him ever existed in point of fact. The defendant shows that he made the statements complained of in the course of his business, believ *33 ing them to be true, and that they contain no-libel, for a libel consists of a malicious publication.
After carefully sifting and duly weighing the evidence placed before me by both sides, I can come to no other conclusion, and I think the defendant is entitled to his discharge. If the rule in a case like the one before me were otherwise, no newspaper could give to the public statistical information relating to any corporation or company, without becoming involved in endless litigation; the slightest inaccuracy to which the ingenuity of counsel could attach an injurious meaning in the remotest degree, would be seized upon and used as the foundation for a long libel suit, and a portion of our press might thus be deterred, in order to escape the annoyance, trouble and expense in this respect, from giving to the public such general information concerning the organization, inside workings, operations and profits of large and wealthy corporations and companies relying for their support mostly upon popular favor, and the patronage of the working classes, which the people at large have a right to demand, and which they cannot very well receive through any other channel except a free, fearless and independent press.
The.order of arrest must be vacated with $10 costs.